**In re Quentin W. BANKS, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals**

Nos. 97–BG–329, 97–BG–1875.

District of Columbia Court of Appeals.

Submitted April 15, 1998.

Decided May 7, 1998.

Before FARRELL, RUIZ and REID, Associate Judges.

PER CURIAM:

The Board on Professional Responsibility ("the Board") has recommended that respondent, Quentin W. Banks, be suspended from the practice of law for ninety days, with the execution of the final thirty days stayed, and after sixty days of the suspension, respondent be placed on probation for a period of one year, without a fitness requirement. In addition, the Board recommends four conditions of probation, relating to respondent's evaluation by, consent to and participation in a program conducted by the Lawyer Practice Assistance Committee ("LPAC"). The Board's recommendation covers two disciplinary matters, (1) No. 97–BG–329 for the violation of Disciplinary Rules 1.3(a) & (c),[1] and Rule 1.4(a)[2] in the handling of a *pro bono* divorce matter; and (2) No. 97–BG–1875 for the violation of Disciplinary Rule 1.5(b) for his representation of a client in an administrative grievance proceeding without a required written statement as to the basis of his fee.[3] The Board's recommendation is

---

**1.** Failure to represent his client zealously and diligently within the bounds of the law, and fail-

ure to act with reasonable promptness in representing the client.

**2.** Failure to keep his client reasonably informed about the status of matter and or failure to comply promptly with reasonable requests for information.

**3.** Prior to consolidation of the two disciplinary matters, the Board had recommended a suspension of sixty days in No. 97–BG–329. Respondent took no exception to this recommendation. In No. 97–BG–1875, Bar Counsel recommended a sixty day suspension, with a fitness requirement, to run concurrently with the sanction imposed in No. 97–BG–329; but the Hearing Committee recommended a one week suspension, to

based in part upon respondent's disciplinary history.[4]

Respondent filed no exception in this court to the Board's recommendation, see D.C. Bar R. XI, § 9(e) (1998). Rule XI, § 9(g)(1), provides that this court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." As we said in In re Goldsborough, 654 A.2d 1285, 1288 (D.C.1995): "The deferential standard mandated by this provision becomes even more deferential where, as here, the attorney has failed to contest the proposed sanction." Id. at 1288. See also Rule XI, § 9(g)(2) (1998) which specifies: "When no exceptions are filed ..., the Court will enter an order imposing the discipline recommended by the Board upon the expiration of the time permitted for filing exceptions."

There is at least one feature of the recommended discipline which is somewhat unusual. Although our research has not been exhaustive, it appears that in all, or nearly all, the cases in which probation has been ordered so far, the misconduct was traceable at least partly to a disability, broadly understood. See In re Stow, 633 A.2d 782, 785 (D.C.1993) ("[I]t is not at all clear that the 'disabilities' for which probation is appropriate should only be those listed in ... the basic diagnostic guide used by health care providers"). See also, e.g., In re Mizel, 703 A.2d 1249 (D.C.1997) (reciprocal probation

ordered where attorney's conduct resulted from depression); In re Powers, 684 A.2d 783 (D.C.1996) (suspension stayed in favor of probation where alcoholism caused original misconduct under test of In re Kersey, 520 A.2d 321 (D.C.1987)); In re Slosberg, 650 A.2d 1329 (D.C.1994) (reciprocal probation where misconduct was traceable to steroid dependency, psychological problems and domestic and work environment stress). Nonetheless, in In re Bradbury, 608 A.2d 1218 (D.C.1992), we expressed the view that "[n]othing in our decisions prohibits the Board from recommending probation in a non-disability case." Id. at 1219 n. 2. In a subsequent reciprocal case, In re Mazor, 677 A.2d 523 (D.C.1996), this court ordered suspension followed by probation where the court's discussion shows no indication of a disability. Thus, particularly when neither respondent nor Bar Counsel has challenged the appropriateness of probation here, we have no reason to pursue further its application to this non-disability case.

Accordingly, we adopt the recommendation of the Board.

*So ordered.*

---

run concurrently with the sanction imposed in No. 97–BG–329, with a fitness requirement. Respondent took "strenuous exceptions" to the Hearing Committee's Report and Recommendation in No. 97–BG–1875 because it took into consideration his past disciplinary record, indicated that his past record evidenced neglect and lack of diligence with respect to his practice, and imposed a fitness requirement.

4. Prior to the two disciplinary matters with which this case is concerned, respondent had been sanctioned four times between 1974 and 1990. The sanctions ranged from private reprimand for intentional failure to fulfill a contract

of employment and impermissible withdrawal, to a thirty day suspension for neglect.

In making its recommendation, the Board stated in part:

We do believe that Respondent's pattern of disciplinary violations demonstrates a need for some assistance in organizing his practice and staying abreast of the ethical requirements imposed on him by his Bar membership. We recommend that that need be addressed by requiring that Respondent seek assistance from the Lawyer Practice Assistance Committee ("LPAC").